E. A. GLAZENER ET AL. v. GLOUCESTER LUMBER COMPANY.

(Filed 9 December, 1914.)

1. **Liens for Labor—Interpretation of Statutes.**

   The lien on personal property given by Revisal, 2017, applies when possession is retained by the mechanic, etc., of the property upon which he claims his lien; and for a lien upon buildings, etc., to obtain under Revisal, sec. 2016, it is necessary for the work, etc., of the one claiming it to have been a betterment to the property.

2. **Same—Sawing Lumber.**

   One claiming a lien for "doing the work of cutting or sawing logs into lumber" under sec. 6, ch. 150, Laws 1913, can only obtain it upon the lumber which his services have helped to convert from the logs; and it is held that the provisions of this section apply when the lienor worked in a band sawmill of a lumber plant, received the plank as it fell from the saw and placed it upon a mechanical device used in its further manipulation.

3. **Liens for Labor—Buildings—Betterments—Interpretation of Statutes.**

   Under contract, one of the defendants agreed to operate a large lumber plant, including a railroad equipment for handling the logs, owned by the other defendant, and assumed the payment of all employees, several of whom filed liens against logs and lumber sawed, in a justice's court, for the nonpayment of wages. *Held,* work done in repairing the track, equipment, etc., was not in contemplation of chapter 150, Laws 1913 (amending Revisal, secs. 2021 and 2033a), so as to give those performing these services a lien on the logs and lumber used or manufactured by the plant; nor could a lien upon the plant hold, for the material had not been used in its construction as betterments.

4. **Liens for Labor—Sawing Lumber—Priorities—Interpretation of Statutes.**

   The lien given to the person "doing the work of cutting or sawing logs into lumber," etc., by chapter 150, Laws 1913, is superior to the lien given to the contractor therefor, or any other person.

HOKE, J., dissenting in part; WALKER, J., concurring in dissent.

APPEAL by plaintiffs Glazener and Fisher in No. 525, and by Lumber Company *et als.* in No. 526, at April Term, 1914, of TRANSYLVANIA, from *Cline, J.*

*O. W. Clayton and N. Y. Gulley for plaintiffs.*
*Galloway & Allison and Merrick & Barnard for defendants.*

CLARK, C. J.  This was an action brought by E. A. Glazener, Jack Fisher, and C. P. Hogsed, separately, to enforce a laborer's lien, and tried together by consent.  Judgment below was entered against Glazener and Fisher, from which they appealed, and in favor of C. P. Hogsed, from which the defendants appealed.

By consent, the court found the facts, which are as follows: The defendant lumber company entered into a contract with Donald Campbell under which he took over the band sawmill and all attachments, the railroad for hauling out logs, and entire rolling stock and certain sections of the timber boundary which the defendant lumber company had been operating, and became responsible for the upkeep of the entire property, and employed and became responsible for the wages of the laborers, among whom are the three plaintiffs.  They represent distinct classes of employees, and about one hundred other actions brought by the other employees to enforce laborers' lien for their wages abide the result of the appeal by these three plaintiffs.

It is admitted that the lumber company had no control over the employees of Campbell, and did not assume any obligation to pay them after they entered Campbell's employment, and the court found that the debts due the plaintiffs were the sole obligation of Campbell, except in so far as they might, as a matter of law, have the lien which they claim.

The court also found that the plaintiff E. A. Glazener was an employee of the defendant lumber company prior to 15 July, 1913, and after the property was turned over to said Campbell he was employed by him.  He was an employee in the blacksmith's shop which was a part of the plant, and worked therein, "making small repairs from time to time on the cars which were used in hauling out the logs from the woods," and he also made necessary repairs, in the way of blacksmithing, to the sawmill machinery.  He was paid by Campbell for the months of August and September, but there was a balance due him for October and November of $86.13 for labor and services rendered in the respect above mentioned, for which he began his action before a justice of the peace and filed his lien against two engines, two logging cars, and certain logs and lumber.

The court finds the facts as to the claim of Jack Fisher to be the same as in the case of Glazener, except that Fisher was a section hand and worked upon the railroad, repairing its tracks, its trestles and bridges from day to day, as he was directed to do by the section foreman, and that there is due him the sum of $11.07 for work and labor done, for which he began his action before a justice and filed his notice of lien upon the same property as Glazener, above set out.

As to the claim of C. P. Hogsed, the court finds the same facts as above, with these exceptions: The said Hogsed worked in the band saw-mill, receiving the plank as it fell from the saw and placing it upon a mechanical device, and there is due him for said service and labor a balance of $12.30 for work and labor done in November, 1913, for which he brought action and filed the lien on the same property as Fisher and Glazener.

The court was not asked to find, and did not find, whether the lumber company was indebted to Campbell upon the contract, as there is an action pending between them to settle their differences.

The court adjudged that the claim of Glazener, who was an employee in the blacksmith shop making repairs on the cars, and of Fisher, who was a railroad hand working on the track and repairing bridges, were not liens upon the lumber or other property named above in the lien filed, but that the claim of Hogsed, who aided in cutting the lumber by taking the boards from the saw as cut and placing them on a truck, was such lien, provided, of course, that there was an indebtedness found to be due from the lumber company to Campbell at the time the notice of the lien was given.

We think his Honor's decision was well considered and correct as to all three parties. The lien claimed by Glazener and Fisher could have no validity unless it comes under the provisions of Revisal, 2017 or 2016. Revisal, 2017, provides:

*"Personal Property Repaired.*—Any mechanic or artisan who shall make, alter, or repair any article of personal property at the request of the owner or legal possessor of such property shall have a lien on such property so made, altered, or repaired, for his just and reasonable charge for his work done and material furnished, and may hold and retain possession of the same until such just and reasonable charges shall be paid"; with a further provision that if not paid within the time specified, such mechanic or artisan may proceed to sell the property so altered or repaired at public auction, upon giving the notice required. This act does not apply, because it is held that under this statute, if the mechanic or artisan surrenders possession of the property, he loses his lien. *Tedder v. R. R.,* 124 N. C., 344; *Block v. Dowd,* 120 N. C., 402; *McDougall v. Crapon,* 95 N. C., 292.

The other section is as follows (Revisal, 2016):

*"On Buildings or Other Property.*—Every building built, rebuilt, repaired, or improved, together with the necessary lots on which such buildings may be situated, and every lot, farm, or vessel, or any kind of property not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same or material furnished."

This section is also construed in *Tedder v. R. R.*, 124 N. C., 342, as meaning that the "Legislature has provided a lien only when the service or labor is for the betterment of property on which it is bestowed, leaving the laborer in all other cases to secure himself as at common law"— *i. e.*, by retaining in his possession any property on which he makes repairs until paid for the same.

It would seem clear, therefore, that Glazener has no lien on the "two engines, two logging cars, and the logs and lumber." It does not appear that he made any repairs or did any work on any of this particular property, and certainly not on the logs and lumber, which is the material point. If he made any repairs on these cars, it does not appear, and he certainly did not retain his lien by keeping possession, as was necessary to a common-law lien.

The same is true as to Fisher, who repaired the tracks, trestle, and bridges, against which he has filed no lien, even if he was entitled to do so under Revisal, 2016. As already stated as to Glazener, Fisher could have no lien on "personal property repaired" under Revisal, 2017, because he surrendered possession of the same. *Block v. Dowd*, 120 N. C., 402, and other cases above cited. Revisal, 2018, applies only to laborers "constructing railroads."

As to the claim of Hogsed, that stands upon an entirely different footing. Laws 1913, ch. 150, sec. 6, provides: "Every person doing the work of cutting or sawing logs into lumber, getting out wood pulp, acid wood, or tan-bark, shall have a lien upon said lumber for the amount of wages due them, and the said lien shall have priority over all other claims or liens upon said lumber, except as against a purchaser for full value and without notice thereof." Hogsed may properly be said to have shared in "the work of cutting or sawing logs into lumber," but has a lien against lumber only.

Laws 1913, ch. 50, sec. 4, applies only where the contractor's business is to build, alter, or repair any building, vessel, or railroad, which was not the case here. Here there was a great plant in which there was some incidental repairing done on the railroad and cars, but that was not the contract within the purview of sec. 4, ch. 150, Laws 1913. The laborer thus repairing the cars could have a lien only upon the identical cars repaired, which is not shown to be the case here, and then only' if he had kept such personal property in his possession. There was no building or railroad being "constructed" upon which the lien could have been filed, nor in fact was any attempted to be filed thereon.

His Honor properly found that neither Glazener nor Fisher was entitled to any lien upon the property described in their notice and claim of lien. He also adjudged that the lien of Hogsed was valid, was properly

filed, and notice was given as required by law, and that there was due him $12.30 for work done in receiving the plank as it fell from the saw and placing it upon the truck that carried it away.

The contract between the lumber company and Campbell was that he was to take the plant into sole control, employ his own laborers, be responsible for the upkeep of all equipment and for the pay of all employees, and was to receive $10 per thousand feet for all lumber which he sawed and stacked in the defendant's (lumber company) yard. The court refused to find whether there was anything due Donald Campbell from the lumber company, as there is a suit between them to settle that matter, and also refused to decide whether the lumber company is indebted to the plaintiff as an original obligor or only by virtue of the notice and lien given under chapter 150, Laws 1913. Such a judgment is similar to a judgment *quando* against an executor or administrator under the former system of procedure, whereby the amount and validity of a claim against an estate was determined, but no execution could issue until assets applicable to such indebtedness came into the hands of the personal representative.

The claim of Hogsed, under the statute, is a preferred lien upon the lumber in the sawing of which he participated and upon which he filed his lien, in preference to Campbell or any one else.

As to all the parties appealing, the judgment is

Affirmed.

HOKE, J., dissenting as to claims of E. A. Glazener and Jack Fisher: It is not contended in this case that the two employees, E. A. Glazener and Jack Fisher, are entitled to a common-law lien on this lumber nor to a lien under the sections of the Revisal of 1905 and the decisions construing the same. It was for this very reason and because an ordinary laborer, working as an employee in these large lumber enterprises, frequently was unable to find his paymaster and lost the fruits of his labor altogether, that the Legislature of 1913 enacted the statute which now controls the matter. Laws 1913, ch. 150, sec. 6, and appearing in Gregory's supplement, sec. 2023a, In the section referred to it is provided: "That every person doing the work of cutting and sawing logs into lumber, getting out wood pulp, acid wood, or tan-bark, shall have a lien upon the lumber for the amount of wages due them, and such liens shall have priority over all other claims or liens upon said lumber except as against a purchaser for full value and without notice thereof," etc. After making provision for the method of making said lien efficient, in ordinary instances, and which has been pursued in these claims, the section provides further, that "If the owner of the lumber cannot be

located, the notice may be given by attaching the same to the pile of lumber, wood,. etc., and any one buying the lumber after that shall be affected with notice of the claim."

On the facts in evidence, which are very fairly set forth in the opinion of the Court, it appears that the lumber company, owning large timber interests, a tramroad, cars, sawmill, shops, etc., engaged in getting out lumber, turned the plant and all the rolling stock, machinery, implements, etc., over to one Donald Campbell, who was to take charge of and operate the same, place the lumber on the yard, and be paid for it by the thousand feet after it was piled, etc. The company and Campbell have fallen out and are in litigation as to some differences between them, and while this suit is being investigated, these laborers, who have done the work, are kept out of their pay and, if this decision stands, are likely to lose it altogether.

To my mind, it is not the correct nor permissible construction of this statute to restrict its operation to laborers who worked at or with the saws. These men were all engaged in one common enterprise of "cutting and sawing logs into lumber or getting out wood pulp, or acid wood," etc., .these terms having reference to and including everything done by them as common employees and contributing to the result. Fisher, who helped keep the tramroad in order, by which the logs were conveyed to the mill, and Glazener, who kept the rolling stock in repair and sharpened the tools, are just as much engaged in cutting and sawing logs into lumber or getting out wood pulp, etc., as the men who handle an axe or feed the machinery in the mill.

There is no finding in the record that the company is "a purchaser for value and without notice," the only exception made by the law, and this being true, these men are within the mischief and, by correct interpretation, within the meaning of the statute, and, in my opinion, their claims should also be allowed.

WALKER, J., concurs in this dissent.