CLARK, C.J., dissenting.
Civil action, heard on case agreed.
The following are the facts submitted:
"1. Plaintiff is, and was at the time this controversy arose, a citizen and resident of Franklin County, N.C. and defendants were at said time and are citizens and residents of Wake County, N.C. and engaged as a partnership in business as mechanics and artisans in expert automobile repairing under the name of Auto Repair and Welding Company, with their place of business in Raleigh, N.C.
"2. On or about 22 May, 1920, plaintiff sold one J. W. Stewart a Liberty Six automobile, motor No. 7K27580, model 1919, taking from said Stewart a chattel mortgage and note in the sum of $500 as balance purchase money for said automobile.
"3. The chattel mortgage, a copy of which is attached hereto and made part of this agreement, was duly recorded on 22 May, 1920, in Book 323, page 323, in the registry of Franklin County.
"4. Various payments have been made on said note by J. W. Stewart, and the balance now due and unpaid is $117.
"5. On 3 December, 1920, subsequent to the recording of said chattel mortgage and note, J. W. Stewart, without the actual knowledge and without the actual consent of plaintiff, and without notifying plaintiff, drove the said automobile to the shop of defendants in Raleigh, Wake County, N.C. and at the request of said Stewart certain repairs were made on said automobile by defendants, which increased the value thereof, and a just and reasonable charge for the work done and material furnished in making said repairs is $460.55, and bill for said amount was rendered to J. W. Stewart and not paid by him within *Page 28 
more than ninety days after the repairs were made, and said bill has never been paid.
"6. That at the time said repairs were made, defendants had no actual knowledge of the existence of the mortgage from J. W. Stewart to plaintiff, and had no actual knowledge of any indebtedness of said Stewart to plaintiff.
"7. That at the time of making said mortgage and at the time of the driving of said automobile to the shop of defendants in Raleigh, J. W. Stewart was a resident of Franklin County, N.C.
"8. The repairs to said automobile were made by the defendants (26) without actual knowledge or actual consent of plaintiff.
"9. At the time said repairs were made, J. W. Stewart was in possession of said automobile as mortgagor under the mortgage held by plaintiff as mortgagee, and said Stewart had been in possession of said automobile at all times since the execution of said mortgage, and was using and driving same with the knowledge and without objection on the part of the mortgagee.
"10. That after the repairs were made, and as soon as plaintiff ascertained that said automobile was in possession of the defendants, he made demand for the possession of same for the purpose of foreclosing his mortgage and thereby collecting the balance due on the note of J. W. Stewart, but defendants refused, and still refuse, to deliver the automobile to plaintiff, claiming the right to hold said automobile and sell it under the provisions of C. S., 2435, and apply the proceeds to the payment of their bill for repairs ahead of plaintiff's claim for balance due on the note of J. W. Stewart secured by mortgage.
"11. Plaintiff claims the right to the possession of said automobile under his mortgage and the right to sell same under the mortgage and apply the proceeds to the satisfaction of balance due on note of J. W. Stewart ahead of payment of the bill of defendants for repairs.
"12. That said automobile is now in possession of defendants, and has at all times been in their possession since it was first left at their shop by J. W. Stewart to be repaired.
"13. That the purpose of the submission of this controversy is to determine whether the plaintiff, by virtue of his mortgage, is entitled to the possession of said automobile and has right to sell same under said mortgage and apply the proceeds of sale first to the satisfaction of balance due on note of J. W. Stewart, or whether the defendants have the right to retain possession of said automobile and sell same under *Page 29 
the provisions of C. S., 2435, and apply the proceeds first to the payment of the charge of defendants for repairs."
Submitted by consent of plaintiff and defendants.
Upon the facts judgment was entered for plaintiff, and defendants excepted and appealed.
C. S., 2435, provides as follows: "Any mechanic or artisan who makes, alters, or repairs any article of personal property at the request of the owner or legal possessor of such property has a lien on such property so made, altered, or repaired for his just and reasonable charge for his work done and material furnished, and (27) may hold and retain possession of the same until such just and reasonable charges are paid; and if not paid for within thirty days, if it does not exceed $50, or within ninety days if over $50, after the work was done, such mechanic or artisan may proceed to sell the property so made, altered, or repaired at public auction, by giving two weeks public notice of such sale by advertising in some newspaper in the county in which the work may have been done, or if there is no such newspaper, then by posting up notices of such sale in three of the most public places in the county, town, or city in which the work was done, and the proceeds of the said sale shall be applied first to the discharge of the said lien and the expenses and cost of keeping and selling such property, and the remainder, if any, shall be paid over to the owner thereof." This statute, passed in the valid exercise of the police powers of government, is applicable to any and all contracts by mortgage or otherwise subsequently made and entered into, and affects their interpretation to the extent that its provisions are pertinent.House v. Parker, 181 N.C. 40; White v. Kincaid, 149 N.C. 415;Brine v. Ins. Co., 96 U.S. 627; Bishop on Contracts, sec. 437. In its effect and purpose the law is in affirmance of the common-law lien given to artisans who have altered or repaired articles of personal property and are in possession of same, with the superadded right of foreclosure by sale in order to make the lien effective, and from a perusal of the terms, it clearly appears that where such a claim is allowed to prevail it is, and is intended to be, a primary lien, superior to that by an existent mortgage or others. The statute providing that the mechanic or artisan may hold and retain possession till his reasonable cost and charges are paid, and the power of foreclosure conferred being by sale of "the *Page 30 
property" itself and not of any special interest therein. A further consideration of the statute will disclose that the lien provided for can only arise when the alterations or repairs are made at the instance of the "owner or legal possessor of the property." And from the meaning and purpose of the statute, and under the authoritative and better considered decisions dealing with the subject, both in the application of the common-law principles involved and in the construction of statutes of similar import, these terms must be understood and interpreted to include all owners of the property and all persons in possession and use of same with the knowledge and assent of the owner and under circumstances giving express or implied authority from him to have such reasonable and necessary repairs made as may be required in the use of the property contemplated by the parties. Smith Auto Co. v. Kaestner,164 Wis. 205; Mortgage Securities Co. v. Pfaffman, 177 Cal. 109;Reeves Co. v. Russell, 28 N.D. 265; Watts, Trustee v. Sweeney,127 Ind. 116; Broom Son v. Dale Sons, 109 Miss. 52;Case v. Allen, 21 Kan. 217; Drummond CarriageCo. v. Mills, 54 Neb. 417; Hammond v. Danielson,126 Mass. 294; Ruppert v. Zang, 73 N.J.L. 216; City Nat. Bank v. Laughlin
(Texas Court of Appeals), 210 S.W. 617; Williams et al. v. Allsup (10 C.B.), 142 Eng. Reprints, p. 514; 1 Jones on Liens, sec. 744; 6 C. J., p. 1138. In illustration and support of the position as it prevailed at common law in case where a dray wagon, under a duly registered valid mortgage, was left with the mortgagor for use in the latter's business, and the same was repaired at the instance of the mortgagor, on a question of priority of the mechanic's lien, it was held that where a mortgagee permits the mortgagor of chattels to retain and use them, authority is impliedly conferred upon the mortgagor to have necessary repairs done on the chattels and the lien of an artificer for repairs done under employment of the mortgagor will have priority over the lien of a mortgage, although the latter be duly recorded. And in the case from the English court of Williams et al. v.Allsup, a mortgagor in possession and use of a ship, with assent of the mortgagee, had certain necessary repairs done thereon, it was claimed that a certain statute had modified the common-law principle giving the mechanic's lien the preference. In rejecting the position contended forByles, J., speaking to the instant question said: "The mortgagees have permitted the mortgagor to be in the uncontrolled possession of the vessel; and it should seem to have been a mortgage for an uncertain and undefined period. Now, as it is obvious that every ship will from time to time require repairs, it seems but reasonable, under circumstances like these, to infer that the mortgagor had authority from the mortgagees to cause such repairs as should become necessary *Page 31 
to be done upon the usual and ordinary terms. Now, what are the usual and ordinary terms? Why, that the person by whom the repairs are ordered should alone be liable personally, but that the shipwright should have a lien upon the ship for the work and labor he has expended on her." And on statutes enacted in affirmance and extension of the common-law principle and expressed in terms exactly or substantially similar to the one before us, in Broom v. Dale, 109 Miss., supra., the Court held: "Under Code 1906, sec. 3075, which is merely declaratory on the common law, and which provides not only that a mechanic may retain, in his possession, any article which he repairs until the price of his labor and material furnished shall be paid, but also provides for the enforcement of the lien, where a mechanic repaired an automobile, the repairs being ordered by the person in possession, who was apparently authorized to contract for same. Such mechanic has a lien for his labor, which takes precedence over the rights of the vendor (29) of the machine who sold it, reserving title to secure payment. but transferred the possession to the party ordering the repairs." And in Securities Co. v. Pfaffmann, 177 Cal., supra, the Court held: "Under sections 3050-52 of the Civil Code, the possessory lien of the improver or repairer of personal property is superior to the preexisting lien of a chattel mortgage." And in Smith v. Kaestner, 164 Wis.: "The mechanic's lien, given sec. 3343, Stats., for repairs upon personal property is superior to the lien of a duly filed prior mortgage upon the property." This was an action of replevin by the vendor holding a mortgage for the purchase price, which had been left in possession of purchaser for use, and which had been repaired at her instance, Vinje, J., delivering the opinion, after stating that there was conflict of opinion in claims dependent upon the common-law principles alone, said: "In view of the provisions of our statutes we need not consider the question of the priority of the common-law lien over an antecedent mortgage. Section 3343 expressly gives the mechanic a prior lien when he has made the repairs at the request of the owner or legal possessor of the property, for it says that in such case he may retain possession of the property until his charges are paid. In the case the defendant (the purchaser) was the legal possessor and the repairs were made at her request. The clause `and may retain possession of such property until such charges are paid' contains no exception in favor of prior-lien claimants, and the court can make none. When the repairs are made at the request of the owner or legal possessor of the repaired property, the statute insures possession thereof in the mechanic till his just and reasonable charges are paid." And speaking generally to the question of priority in Jones on Liens, sec. 744, the author says: "It is certain that the mortgagor *Page 32 
cannot by contract create any lien which shall have priority over the mortgage. But the mortgagee's authority for creating the lien may be implied, and the implication arises from the mortgagor being allowed to remain in possession of the property and to use it for profit." There are cases apparently to the contrary in some of the other states, but we do not consider it necessary or desirable to make extended references to these decisions. Some of them proceed on the principle that the lien claimed, not being made dependent on retention of possession, was entirely statutory, and as the statute in terms established no priority, the mortgage of prior registry would hold its preference. This seems to be the position approved in Shaw v. Webb, 131 Tenn. 173. In others interpreting the common-law principle it has been held that the right to incur the charges claimed to the owner's prejudice was not implied from the possession and use allowed by the owner to the person who made the contract for the services rendered. Thus, in Storms v. (30) Smith, 137 Mass. 201, it was decided that a claim for storage of furniture incurred by the mortgagor in possession should not prevail as against the mortgage of prior registry, the right to incur such a charge not being implied from the possession allowed to the mortgagor. But the same Court, in Hammond v. Danielson, 126 Mass., supra, held that in case of repairs to a hack the artisan's lien had priority, it appearing that the use of the hack was contemplated. But in none of these cases, so far as examined, was the priority of the artisan's lien denied, where, as in this instance, the statute in affirmance of the common law gives to the artisan the right to retain the property till the reasonable repairs are paid for, with the further right to sell the property for same, and, where the repairs in question are made at the instance of the owner himself, or legal possessor, that is, one to whom the owner has given possession, and under circumstances clearly contemplating that the property should be kept in use by the possessor and the necessary and reasonable repairs made. It is clear that on the facts presented and on others in like case, the vendor of an automobile taking a purchase-money mortgage, and who transfers the possession to the vendee for an indefinite period, does so in contemplation that the machine is to be used and kept in use, and with the implied authority to have such reasonable and just repairs made as will be required by the purpose contemplated. It is urged upon our attention that on authority with us, where a vendor takes a purchase-money mortgage which is duly registered, the title is considered as never having passed to the vendee, but that the vendor remains continuously the owner, and for the purpose of shutting off existent liens this is undoubtedly true. Furthermore, it is the recognized principle in this jurisdiction that a *Page 33 
mortgagee, after default, is regarded as the owner, with the right of taking possession of the property at will. Hinson v. Smith, 118 N.C. 503. But the principle we uphold and apply in this case is not in contravention of these rulings. Here the statute, as stated, gives the prior lien for repairs, whenever they are made at the instance of the "owner or legal possessor," and our decision rests upon the position that the mortgagor is such legal possessor, having implied authority from the owner, the mortgagee, to contract for repairs and subject the machine to the lien as provided. Again, we are referred to various decisions in this State to the effect that in order to a valid mechanic's lien there must be a personal debt upon which it may be based. The cases where this principle has been upheld were those involving claims for a mechanic's lien of real estate, coming under other provisions of other laws, C. S., 2433,et al., as in Kearney v. Vann, 154 N.C. 311; Weathers v. Borders,124 N.C. 613, or if against personalty the property was in the position of fixtures and the artisan was never in possession of same. (31) Thus, in Baker v. Robbins, 119 N.C. 289, the claimant had made repairs on a stationary boiler used in operating a sawmill, and was never in possession of the boiler within the purview and meaning of the statute we are now considering. While some of the expressions in this opinion may militate against the validity of the defendants' lien, a perusal of the opinion will show that it proceeded upon the theory that claimant was not in possession of the property, and had never been.
On the facts set forth in the case agreed, we are of opinion, and so hold, that defendant's claim for reasonable repairs made at the instance of the legal possessor and under the implied authority of the mortgagee, has the prior lien, and this will be certified that judgment may be entered and enforced pursuant to law.
Reversed.