W. E. SUGG v. O. C. FARRAR & CO.

*Landlord's Lien— Waiver—Revocation—Executory Agreements— Consideration.*

1. In an action for the value of certain cotton, it appeared that the plaintiff, who had a landlord's lien thereon, had directed one of the defendants (who were the purchasers thereof from the plaintiff's tenants) to pay over the purchase-money to the tenants, and then, the next day, and before the money was actually paid, the plaintiff revoked the order. There was no consideration for the order, and there was no change of the *status* of the parties. The defendants, three days thereafter, paid the money—the price of the cotton—to the plaintiff's tenants, who knew nothing of the order: *Held*, the plaintiffs were entitled to recover.

2. A mere executory agreement, without consideration, where the *status* of the parties remains the same, may be revoked.

3. A thing of value, as a lien, may be given up, but a contract to give it up, in order to be enforced, must be based upon a consideration.

This was a CIVIL ACTION, tried at Spring Term, 1890, of EDGECOMBE Superior Court, on appeal from a Justice's Court, before *Womack, J.*

There was evidence tending to show that the plaintiff leased certain lands for the year 1888 to Keel & Brother, at the stipulated rent of 4,800 pounds of lint cotton, and that during said year he advanced to them, to be used in the cultivation of the crops grown on said land, guano of the value of 1,605 pounds of lint cotton; that Keel & Brother paid plaintiff 5,836 pounds of cotton, leaving still due on said advance, 589 pounds of cotton; that on the 19th day of October, 1888, Peyton Keel, of Keel & Brother, delivered to the defendants five bales of cotton of the crop grown on said land during that year, and the 20th of October, 1888, one bale more of said cotton; that on the 22d of October, 1888, O. C. Farrar, of the defendant firm, applied to the plaintiff to know if the said firm could not pay the price of said cotton to the said Keel & Brother, when plaintiff consented that they might do so; that upon reflection the plaintiff addressed a letter to O. C. Farrar the following morning, notifying him that he would not waive his lien as landlord until the balance due him (589 pounds lint cotton) was paid, and recalling the permission given the day before that the money might be paid to Keel & Brother, which letter was delivered to the said Farrar on the same day it was written ; that thereafter, on the 25th of October, 1888, without having before seen either of the firm of Keel & Brother, or had any communication with them after the time the cotton was delivered by them to these defendants, these defendants paid to the said firm of Keel & Brother the price of the six bales of cotton. There was evidence on the part of the defendants tending to show that the price of the said cotton was paid by the defendants before the said letter was received.

It was further contended on the part of the defendants that the plaintiff had no power to recall or revoke the per-

mission given the defendants to pay the money to Keel & Brother.

By consent of parties, His Honor reserved this question until after verdict, and submitted this issue to the jury:

"In what sum are the defendants indebted to the plaintiff?" The jury answered for their verdict, "Fifty-one dollars and twenty-one cents."

His Honor, being of opinion with the defendants upon the question reserved, rendered judgment for the defendants.

From which judgment the plaintiff appeals.

No counsel for plaintiff.
*Mr. H. L. Staton* (by brief), for defendants.

DAVIS, J.: The facts of this case are not as fully and clearly stated as they might have been, but it is plainly to be inferred, from the record, that the defendants purchased the cotton of Keel & Brother (the tenants of the plaintiff) before his lien as landlord had been fully satisfied. The plaintiff had one of three remedies: he could have sued for the specific property, or in tort for its conversion, if its delivery was refused (*Belcher* v. *Grimsley*, 88 N. C., 88), or he might have waived the tort, by ratifying the sale, and have brought his action in the nature of assumpsit for money had and received. He has elected to pursue the last named remedy, and he is entitled to recover, unless the defence relied upon is valid.

The "price" of the cotton was in the hands of the defendants, subject to the lien and for the use of the plaintiff, and his right to it was distinctly recognized. Now, in this state of the case, the plaintiff, upon the application of one of the defendants, and without any consideration therefor, consented that the defendants might pay the price to Keel & Brother.

So far as appears, the latter had no knowledge of this transaction, nor does there appear to have existed any privity between them and the defendants.

Before the defendants had paid the money to Keel & Brother, who appeared to have been the only parties interested in the matter, and before, so far as the case discloses, they even had knowledge of the plaintiff's consent that the defendants might pay the money to them, and before there was any alteration or change in the condition or relation of the parties the plaintiff revoked the permission given to the defendants, and required them to pay the money to him, according to the original obligation. It is contended, for the defendants, that when the plaintiff consented that they might pay the price of the cotton to Keel & Brother, "it was a complete waiver and cancellation of plaintiff's lien, and that very instant the ownership of the price of said cotton became a vested right in Keel & Brother, and they could have successfully maintained their action against the defendants for the recovery thereof, had they declined to pay it to them," and that the plaintiff has no power to recall or revoke the permission given the defendants to pay the money to Keel & Brother. Undoubtedly, if the defendants had paid the money to Keel & Brother before the revocation of the permission, they would not be liable, for they would have been paying out the plaintiff's money in accordance with his express authority and permission; but we are unable to see, if plaintiff's permission was necessary, why he could not revoke it at any time before it was acted upon, or how he lost his lien by what occurred between him and the defendants. The agreement was an executory one, and without consideration, and even if it appeared that the defendants were acting as the agents of Keel & Brother (and no agency appears), it would not have worked a discharge of the lien. Keel & Brother could not have compelled either the plaintiff or defendants to have executed the agreement against the

plaintiff's consent, for the plain reason that there was an entire absence of any consideration. "A lien must be regarded as something of value. It may be given up without any valuable consideration; but an agreement to give it up, in order to be obligatory, must be based upon a legal consideration." *Danforth* v. *Pratt*, 42 Maine, 50. The plaintiff simply, and without any consideration, gave his consent to the defendants to pay the price of the cotton to Keel & Brother. Before the defendants had acted upon the consent thus given, and before any rights had accrued to anybody by reason of the consent, it was withdrawn, and, when paid, it was against the consent of the plaintiff, without any authority, and made the defendants liable. The fact that the defendants paid the money to Keel & Brother *after* the revocation of authority to do so, cannot protect them. The cases cited by counsel for the defendants have no application to this case. The case of *McDougall* v. *Crapon*, 95 N. C., 292, relates to a common law lien where the *surrender of the possession* is a discharge of the lien, whereas the lien here is conferred by statute, and is not lost by the wrongful act of the tenant, who cannot transfer the possession to any one to the prejudice of the landlord. In the other case, *Brem* v. *Covington*, 104 N. C., 591, there was a consideration, and the order was held to be irrevocable. Here, there was no consideration, and the revocation was before any *rights* had accrued to be prejudiced. The plaintiff was entitled to recover, and there is error.

Error.